IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY PERAICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 10 C 7040 |
| | ) |
| VILLAGE OF McCOOK, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Anthony Peraica ("Peraica") has brought this action against the Village of McCook ("McCook"), McCook Mayor Jeffrey Tobolski ("Tobolski") and various local law enforcement officials[1] under 42 U.S.C. § 1983 ("Section 1983"). Peraica charges that defendants violated his constitutional rights by arresting and detaining him because of his political affiliations -- more specifically because of his 2010 campaign against Tobolski for Cook County 16th District Commissioner. Peraica also brings a number of state claims under the rubric of "supplemental jurisdiction" as conferred by 28 U.S.C. § 1367 ("Section 1367").

Defendants have now moved for judgment on the pleadings -- and for dismissal of Peraica's Amended Complaint (hereafter simply "Complaint") in its entirety -- under Fed. R. Civ. P. ("Rule") 12(c). For the reasons stated in this opinion, this Court grants the motion for judgment on the pleadings as to Peraica's Section 1983 claim but declines the

---

[1] Peraica has also included named and unnamed officers with the McCook and Stickney Police Departments as defendants. For the purposes of this opinion the individual officers will not be named except where necessary.

invitation to exercise jurisdiction over his Section 1367 state law claims, which are accordingly dismissed without prejudice pursuant to Rule 12(b)(1).

**Legal Standard**

Courts review Rule 12(c) motions under the same standards as motions brought under Rule 12(b)(6) (Adams v. City of Indianapolis, 742 F.3d 720, 727-28 (7th Cir. 2014)). Adams, id. at 728 (citations and internal quotation marks omitted) then went on to spell out those standards in terms that encompassed the "plausibility" requirement introduced by what this Court has termed the Twombly-Iqbal canon:

> To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Factual allegations are accepted as true at the pleading state, but allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement of relief.[2]

And importantly, courts "need not ignore facts set forth in the complaint that undermine the plaintiff's claim or give weight to unsupported conclusions of law" (Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)).

In addition to considering the facts set out in a complaint, courts can take "[j]udicial notice of historical documents, documents contained in the public record, and reports of

---

[2] [Footnote by this Court] Although post-Adams opinions emanating from our Court of Appeals have delivered differing messages as to the relevance of the Twombly-Iqbal canon in the judgment-on-the-pleadings context (compare Levin v. Miller, 763 F.3d 667, 671 (7th Cir. 2014) with Vinson v. Vermilion County, Ill., 776 F.3d 924, 928 (7th Cir. 2015)), that subject poses no difficulty here -- after all, the addition of a "plausibility" requirement could only erect a higher hurdle for Peraica to surmount, and as this opinion demonstrates he cannot manage to overleap the lower hurdle that antedated Twombly.

administrative bodies" (Menominee Indian Tribe of Wis. v. Thompson, 161 F.3d 449, 456 (7th Cir. 1998)). Such public records include state court proceedings in which a plaintiff has previously litigated issues identical to those presented in the complaint (4901 Corp. v. Town of Cicero, 220 F.3d 522, 527 n.4 (7th Cir. 2000)). In this instance that calls for this Court to take judicial notice of the records (found at Dkt. 73-1 to Dkt. 73-6) of the criminal proceedings against Peraica in the Circuit Court of Cook County and, on appeal, before the Illinois Appellate Court for the First District.

## Factual and Procedural Background[3]

This lawsuit arises out of the October 30, 2010 arrest of Peraica by McCook Police Officer Russell Delude ("Delude," one of the named defendants) and other officers with the McCook Police Department (Compl. ¶¶ 26, 53). That night was just three days before the election for Cook County 16th District Commissioner in which Peraica and Tobolski were rival candidates.

Here in summary is the story as Peraica tells it (the phrasing is intentional) in his Complaint. On the night in question Peraica was the passenger in a white Chevrolet van driving southbound on Joliet Road in McCook (id. ¶ 26). That van was pulled over by McCook Police Officer Radke ("Radke"), who "proceeded to harass" Peraica and the van's driver and to search the van, uncovering nothing incriminating (id. ¶¶ 29-31).

There was then a delay of about 45 minutes, during which time Tobolski and McCook Police Chief Frank Wolfe ("Wolfe") were both informed of the traffic stop and the fact that

---

[3] This opinion identifies Peraica's and defendants' respective submissions as "P." and "D.," followed by appropriate designations of their memoranda as "Mem. --," "Resp. Mem. --" and "Reply Mem. --."

Peraica was a passenger in the van (id. ¶¶ 40-41). Radke told Peraica and the driver that they were free to go, but then his supervisor, Officer Browder ("Browder"), arrived on the scene and countermanded Radke's order (id. ¶¶ 34-35). Browder recognized Peraica and made a cell phone call to an unknown recipient (id. at ¶¶ 37-38).

Following that call -- and at the direction or participation of Wolfe and Tobolski -- a man was brought to the scene of the traffic stop who falsely claimed to have witnessed Peraica tampering with a cardboard campaign sign (id. ¶¶ 42-43). Peraica was placed under arrest and charged with criminal damage to property (id. ¶ 46). Upon his release on bond four hours later Peraica learned that numerous media outlets had become aware of his arrest and that a local news reporter, on information provided by Tobolski, was waiting for him when he was released from police custody (id. ¶¶ 53-56). It was all a grand conspiracy, Peraica alleged, to discredit him on the eve of the election (id. ¶¶ 57-64).

Peraica told that tale of woe (and quite a tall tale it turned out to be) in his complaint filed in this action on November 1, 2010, just two days after his arrest.[4] But this federal lawsuit was soon stayed, for state authorities had initiated criminal proceedings against Peraica in the Circuit Court of Cook County, Fifth Municipal District. There, after a bench trial, Peraica was convicted of criminal damage to property (People v. Peraica, No. 10-5-7284-01 (July 20, 2011) (Trial Tr. at 164:3-164:12)). Following the trial the Illinois Appellate Court affirmed the conviction (People v. Peraica, 2014 IL App (1st) 133080-U (2014)),[5] and the Illinois Supreme

---

[4] That original complaint was later amended without substantially changing the allegations.

[5] Later citations to the Appellate Court's decision will simply take the form "Peraica ¶ --," obviating the need to repeat the case citation just set out in the text.

Court then denied leave to appeal (People v. Peraica, reported in table at 23 N.E. 3d 1205 (Jan. 28, 2015)), making Peraica's conviction final.

At both the trial and appellate level the Illinois courts repeatedly and definitively rejected most of the "facts" that Peraica has alleged before this Court (and that are summarized above). Apart from the finding of guilt (which necessarily did away with Peraica's contention that multiple police officers as well as Wolfe and Tobolski had fabricated all the evidence against him), the trial court also held that the initial stop of the van was justified due to the driver's failure to signal, that the stop was reasonably extended and finally that probable cause had existed to arrest Peraica (see Peraica ¶¶13-14). And those holdings were carefully analyzed and squarely upheld by the Appellate Court (Peraica ¶¶ 36-46).

In upholding those rulings the Appellate Court implicitly but necessarily rejected the version of events that Peraica had put forward in his Complaint about the timing of the decision to arrest him. Instead that court relied on findings (1) that Officer Delude (not Radke) pulled the van over, (2) that Delude personally observed a stick in the back of the van matching the description of a stick that had been used to destroy campaign signs and (3) that Delude had received reports from another officer that vandalism suspects had just been seen in a van similar to that carrying Peraica (Peraica ¶ 45). And that court also implicitly but necessarily rejected Peraica's allegations that Browder suspiciously appeared after a long delay and ordered Peraica to remain right after permission had been given for him to move along. Instead the Appellate Court took as gospel Delude's explanation for why there was a delay between the initial stop, the arrival of another officer and finally the witness show-up and arrest of Peraica: Delude needed time to ask another officer to look for damaged campaign signs at the location where Peraica's van had just been seen, and it was that officer who appeared on the scene after some delay (id.).

Lastly, as to the eyewitness who fingered Peraica immediately before his arrest -- and who Peraica claimed had been coached by police to lie -- the trial court specifically credited that witness' identification and thus necessarily rejected Peraica's allegation of witness tampering (Trial Tr. 163:16–164:6):

> Mr. Baloga [the above-mentioned witness] looked out his window; saw a person. First he heard noise, saw somebody out there, saw the profile from both sides, saw the person leave, saw the person hitting the sign. . . . The fact remains the person who perpetrated the crime was apprehended a short distance away. There was a show-up on the street. There was no doubt in Mr. Baloga's testimony as to who did it. He identified Mr. Peraica as the offender.

Defendants moved that this Court take judicial notice of all of those state court findings and of Peraica's criminal conviction and, having done so, enter judgment on the pleadings in defendants' favor. Following that motion Peraica withdrew his false arrest and unlawful detention theories of relief. But he now pushes forward for Section 1983 purposes on the theory that he was deprived of his right to political affiliation in violation of the First and Fourteenth Amendments, entitling him to relief under Section 1983. In addition he continues to press for relief under Illinois tort law. With defendants having replied to Peraica's memorandum, the motion is ripe for decision.

## **Applicability of Heck v. Humphrey**

Defendants and Peraica devote much of their attention to the question whether Heck v. Humphrey, 512 U.S. 477 (1994) bars Peraica's claim in its entirety. Defendants assert that Heck has that effect, while Peraica asserts that Heck does not apply to him because he is not in custody. And on the narrow question of whether Heck itself applies to a non-incarcerated person such as Peraica, he carries the day.

Heck involved a suit for damages under Section 1983 brought by a state prisoner who alleged that the prosecutor, in securing his conviction, had unconstitutionally destroyed exculpatory evidence and committed other constitutional violations (512 U.S. at 478-79). Hence if the prisoner prevailed it would call the validity of his conviction into doubt. This is the rule that the Supreme Court announced for such situations (id. at 486-87, footnote omitted, emphasis in original):

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

Heck left unresolved the question whether that limitation on Section 1983 applied to plaintiffs for whom potential habeas relief was unavailable.[6] But something less than four years after Heck, in Spencer v. Kemna, 523 U.S. at 1 (1998), Justice Ginsburg belatedly joined Justice Souter's concurrence in the Heck judgment, 512 U.S. at 502-03 (which had itself been joined by Justices Blackmun, Stevens and O'Connor), agreeing with Justice Souter's concurring opinion in Spencer, 523 U.S. at 18-21 that a plaintiff without access to possible habeas relief can bring an action under Section 1983 to attack the constitutionality of his conviction (see Justice Ginsberg's concurring opinion, id. at 21-22). Justices Souter, O'Connor and Stevens also took the opportunity in Spencer, id. at 18-25 to confirm their view that Heck generally applies only when

---

[6] That ambiguity in Heck's holding was explicitly acknowledged -- but left open -- in Muhammad v. Close, 540 U.S. 749, 752 n.2 (2004) (per curiam).

- 7 -

habeas relief is potentially available, and they were joined there by Justice Breyer, who had replaced Justice Blackmun.

That produced a sort of rolling five-Justice majority in favor of limiting Heck to situations where resort to potential habeas relief was available -- but there has never been a single majority opinion so holding. That in turn has produced a circuit split (contrast, e.g., Entzi v. Redmann, 485 F.3d 998, 1003 (8th Cir. 2007), which holds the Heck bar applicable to nonprisoners, with Cohen v. Longshore, 621 F.3d 1311, 1316-17 (10th Cir. 2010), which joins a number of other circuits that take the opposite position).

As for our own Court of Appeals, a panel of that court had early on implied its agreement with the view expressed by the five Justices in their Spencer opinions (Carr v. O'Leary, 167 F.3d 1124, 1127 (7th Cir. 1999)). More recently Burd v. Sessler, 702 F.3d 429, 435 (7th Cir. 2012), citing both Carr and later Seventh Circuit decisions, has reconfirmed that position in no uncertain terms:

> We have held that, where a plaintiff cannot obtain collateral relief to satisfy Heck's favorable termination requirement, his action may proceed under § 1983 without running afoul of Heck.

In sum, there really can be no arguing under the law of this circuit that Heck itself bars Peraica's complaint.[7] With a possible resort to habeas relief unavailable to Peraica, Heck is no obstacle to him.

---

[7] Truth be told, Burd actually invoked Heck to bar the complaint of a plaintiff who unreasonably delayed his challenge to a state court criminal conviction until habeas relief was no longer available to him. But no such delay took place in the present case, as Peraica was held for mere hours and filed his Complaint here shortly after his release on bond. Moreover, because this Court finds that Heck does not bar plaintiff's Complaint due to the unavailability of habeas relief, it is unnecessary to address Peraica's other arguments as to Heck's inapplicability.

## Issue Preclusion[8]

But Peraica's victory as to the applicability of Heck turns out to be a hollow one. Peraica, in his zeal to avoid Heck, used his response to argue that the principles of issue preclusion guiding the application of Heck (see Moore v. Mahone, 652 F.3d 722, 723 (7th Cir. 2011)) would also pose no problem for his Complaint, due (in Peraica's version of events) to purported distinctions between what the state courts found and what his Complaint alleges (P. Resp. Mem. 7-8). Defendants have replied, however, that Peraica's purported distinctions are legally irrelevant and that a jury could not find in Peraica's favor without upsetting the final state court judgment (D. Reply Mem. 7-9). Defendants have by far the sounder argument, and so Peraica is precluded from litigating his constitutional claim.[9]

It is well established that the doctrines of issue and claim preclusion apply to Section 1983 claims. On that score Allen v. McCurry, 449 U.S. 90, 103-04 (1980) (footnote omitted) teaches:

---

[8] Although the litigants speak in terms of "collateral estoppel," a usage that has caused the term "res judicata" to be employed primarily to designate the other branch of the preclusive bar that may be erected by prior litigation, this Court has always preferred the more precise locution of "issue preclusion" and "claim preclusion" to that terminology (see Justice Blackmun's highly thoughtful explanation in Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 77 n. 1 (1984). Even though a plebiscite among lawyers and judges would most likely reflect a majority preference for the older and more traditional usage, the great advantage of the duality employed here is that it unambiguously describes what line of analysis is at issue in the case at hand (as the older usage does not). Moreover, it avoids the confusion still created in some quarters by the frequent use of "res judicata" to characterize both types of preclusion.

[9] Although the parties have joined the matter of issue preclusion somewhat awkwardly, it is so clearly relevant to this case that even had it not been addressed by the parties this Court would have raised it sua sponte in the interest of judicial economy (see Studio Art Theatre of Evansville, Inc. v. City of Evansville, 76 F.3d 128, 130 (7th Cir. 1996)).

> [N]othing in the language or legislative history of § 1983 proves any congressional intent to deny binding effect to a state-court judgment or decision when the state court, acting within its proper jurisdiction, has given the parties a full and fair opportunity to litigate federal claims, and thereby has shown itself willing and able to protect federal rights. And nothing in the legislative history of § 1983 reveals any purpose to afford less deference to judgments in state criminal proceedings than to those in state civil proceedings.

Under issue preclusion analysis, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation" (Montana v. United States, 440 U.S. 147, 153 (1979)). In practice the effect of Allen and Montana has been that federal district courts apply the relevant state's issue preclusion doctrine to determine what, if any, preclusive effect a state-court judgment has on a Section 1983 claim (Brown v. City of Chicago, 599 F.3d 772, 774 (7th Cir. 2010)).

As for Illinois state courts, In re A.W., 231 Ill. 2d 92, 99, 896 N.E. 2d 316, 321 (2008) has reiterated the three requirements for the application of issue preclusion:

> (1) the issue decided in the prior adjudication is identical to the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication.

Furthermore, "under Illinois law, a criminal conviction precludes relitigation of issues that were necessarily decided in the criminal proceedings" (Brown, 599 F.3d at 774 (citation omitted)). Neither party disputes that requirements (2) and (3) are met here, so the question becomes whether there is an issue already decided in the state proceedings against Peraica that would need

to be relitigated for Peraica to prevail on his claim of retaliatory arrest in violation of the First Amendment.[10]

That in turn requires an examination of what Peraica must show to prevail on such a theory. First off, "the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out" (Hartman, 547 U.S. at 56). And in that respect Thayer v. Chiczewski, 705 F.3d 237, 251 (7th Cir. 2012) sets out three elements that plaintiffs must show to make out a prima facie case of retaliatory arrest in violation of the First Amendment:

> (1) they engaged in activity protected by the First Amendment; (2) they suffered a deprivation that would likely deter First Amendment activity; and (3) the First Amendment activity was at least a motivating factor in the police officer's decision.[11]

---

[10] Though Peraica styles his claim as one against retaliatory arrest (see Compl. ¶¶ 74-80), a generous reading of the Complaint also suggests that he might attempt to proceed on theories that defendants prosecuted him and defamed him in retaliation for his protected First Amendment activities. But he clearly cannot state a claim under either of those theories. First, a plaintiff asserting a claim of retaliatory prosecution must show an absence of probable cause (Hartman v. Moore, 547 U.S. 250, 263-66 (2006)). Given the ruling of the Appellate Court here (Peraica ¶¶ 44-45), Peraica is precluded from so doing. Second, while defamation could theoretically support a claim of unconstitutional retaliation independent of Peraica's arrest and prosecution (see Rakovich v. Wade, 850 F.2d 1180, 1189 (7th Cir. 1988) (en banc), partially abrogated on a wholly different issue by Spiegla v. Hull, 371 F.3d 928, 941-42 (7th Cir. 2004)), the statements that the Complaint calls false and defamatory turn out, in light of the rulings of the Illinois courts, to be truthful. So Peraica cannot proceed on that theory either.

[11] [Footnote by this Court] Courts are split as to whether plaintiffs must also show a fourth element: the absence of probable cause (compare Ford v. City of Yakima, 706 F.3d 1188, 1194 (9th Cir. 2013) with Galarnyk v. Fraser, 687 F.3d 1070, 1076 (8th Cir. 2012)). That split results from the explicit agnosticism of Reichle v. Howards, 132 S.Ct. 2088, 2093 (2012) on the question. In our circuit Thayer, 705 F.3d at 253 followed the lead of the Supreme Court and refrained from resolving the question one way or another. But as will be seen, Peraica has failed to plead facts plausibly showing that his lawful First Amendment activity caused his arrest, and so his Complaint would fail to state a claim regardless of whether a claim of retaliatory arrest in violation of the First Amendment requires an absence of probable cause.

Because it is undisputed that Peraica can make out the first two elements of his prima facie case without disturbing the state court judgment, this opinion moves directly to the third element: whether Peraica has alleged facts tending to show that his lawful campaign activity (as opposed to his unlawful sign destruction) was "at least a motivating factor" in the decision to arrest him.

But Peraica cannot clear even that low hurdle without running afoul of the findings of the Illinois courts. Once this Court disregards the allegations that contradict those findings (a process of elimination set out in the Factual and Procedural Background section of this opinion), the only nonconclusory allegations remaining that even remotely suggest illegal retaliation are those asserting that (1) Tobolski told a reporter Peraica had been arrested and (2) unidentified defendants distributed Peraica's mug shot to the media (Compl. ¶¶ 55-56). But it would be implausible to conclude from such post-hoc, politically opportunistic communications that illegal retaliation actually motivated the arrest of Peraica in the first instance. Those allegations of course leave open the possibility that Peraica's arrest was so motivated, but that is not enough for Rule 8 purposes.

Here the seminal case of Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), quoting Rule 8(a)(2), is directly on point:

> But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not "show[n]" -- "that the pleader is entitled to relief."

Given the magnitude of Peraica's blunder and its timing (immediately before the election), it would be strange indeed for Tobolski and those close to him not to publicize Peraica's arrest. Hence defendants' communications with the press, which Peraica would seek to advance as

evidence of illegal retaliation, were "not only compatible with, but indeed [were] more likely explained by, lawful . . . behavior" (id. at 680).

No other allegations going to the issue of retaliatory motive (e.g., defendant officers supposedly calling Tobolski and Wolfe during the Terry stop, the ostensibly suspicious timing of the decision to extend the stop, the purported fabrication of evidence, etc.) survive the intervening judgments of the Illinois courts. And so it is clear that after the application of issue preclusion Peraica's Complaint fails utterly to show that any protected First Amendment activity on his part was a motivating factor in his arrest.

Without that minimal showing of causation, Peraica cannot state a claim for relief from retaliatory arrest. And because that was Peraica's last remaining federal claim, there is no reason for this Court to retain jurisdiction of this lawsuit.

## **Conclusion**

Defendants' Rule 12(c) motion (Dkt. No. 73) is granted as to Peraica's claim for relief under Section 1983, and that claim is dismissed with prejudice. Pursuant to the teaching embodied long ago in United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966), Peraica's remaining state-law claims are dismissed without prejudice to his ability to refile them in a state court of competent jurisdiction.

_____
Milton I. Shadur
Senior United States District Judge

Date: August 28, 2015